_____ FILED   _____ ENTERED
_____ LODGED  _____ RECEIVED

AUG 0 7 2008   RE

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                      DEPUTY

08-CV-01183-MISC

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON AT SEATTLE

KATHY HATFIELD, individually and on behalf of all others similarly situated,

Plaintiff,

v.

UNITED STATES CELLULAR CORPORATION, UNITED STATES CELLULAR OPERATING COMPANY OF YAKIMA, THUMBPLAY, INC.,

Defendants.

NO. C08-1183 MJP

**ATTORNEY VERIFICATION OF STATE COURT RECORD**

I certify that the documents attached hereto, as Exhibit A, are true and correct copies of the complete records and proceedings known to Defendant in the state court action entitled *Kathy Hatfield* v. *United States Cellular Corp., et al.*, filed with the Superior Court of Washington for Snohomish County, Cause No. 08-205732-0.

ATTORNEY VERIFICATION OF STATE COURT RECORD - 1
NO.

SAVITT & BRUCE LLP
1325 Fourth Avenue Suite 1410
Seattle, Washington 98101-2509
(206) 749-0500

DATED: August 7th, 2008

SAVITT & BRUCE LLP

By: _[signature]_ WSBA#15237
for James P. Savitt, WSBA No. 16847
1325 Fourth Avenue, Suit 1410
Seattle, Washington 98101-2509
Tel: (206) 749-0500
Fax.: (206) 749-0600
jsavitt@jetcitylaw.com

*Attorneys for Defendant Thumbplay, Inc.*

Of Counsel:

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
  Carey R. Ramos
  Steven B. Rosenfeld
  1285 Avenue of the Americas
  New York, New York 10019
  Telephone: 212-373-3000
  Facsimile: 212-492-0240
  Email: cramos@paulweiss.com

ATTORNEY VERIFICATION OF STATE COURT RECORD - 2
NO.

# EXHIBIT A

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process
Transmittal**
07/09/2008
CT Log Number 513615736

|||||||||||||||||||||||||||||||||||||||||||||||||||||||||

**TO:**   Are Traasdahl, President
Thumbplay, Inc.
599 Broadway,, Floor 8
New York, NY 10012

**RE:**   **Process Served in Delaware**

**FOR:**   ThumbPlay, Inc. (Domestic State: DE)

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

**TITLE OF ACTION:**   Kathy Hatfield, individually and on behalf of all others similarly situated,
Pltf. vs. United States Cellular Corporation, etc., et al. including Thumbplay, Inc., etc.,
Dfts.

**DOCUMENT(S) SERVED:**   Summons, Complaint and Demand

**COURT/AGENCY:**   Snohomish County Superior Court, WA
Case # 08-205732-0

**NATURE OF ACTION:**   Class action against defendants for their wrongful practice of charging and directing
and/or facilitating the charging of cellular telephone customers for products and
services the customers have not authorized which has resulted in defendants'
unlawfully collection of significant sums of money from consumers

**ON WHOM PROCESS WAS SERVED:**   The Corporation Trust Company, Wilmington, DE

**DATE AND HOUR OF SERVICE:**   By Process Server on 07/09/2008 at 12:45

**APPEARANCE OR ANSWER DUE:**   Within 60 days, exclusive of the day of service

**ATTORNEY(S) / SENDER(S):**   Clifford A. Cantor, P.C.
Law Offices of Clifford A. Cantor, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
425-868-7813

**ACTION ITEMS:**   SOP Papers with Transmittal, via Fed Ex 2 Day , 790541101673

**SIGNED:**   The Corporation Trust Company
**PER:**   Scott LaScala
**ADDRESS:**   1209 Orange Street
Wilmington, DE 19801
**TELEPHONE:**   302-658-7581

Information displayed on this transmittal is for CT Corporation's
record keeping purposes only and is provided to the recipient for
quick reference. This information does not constitute a legal opinion
as to the nature of action, the amount of damages, the answer date,
or any information contained in the documents themselves.
Recipient is responsible for interpreting said documents and for
taking appropriate action. Signatures on certified mail receipts
confirm receipt of package only, not contents.

cT

1
2
3
4
5
6           SUPERIOR COURT OF WASHINGTON
7                     KING COUNTY

| | |
|---|---|
| 8   KATHY HATFIELD, individually and on | CLASS ACTION |
| 9   behalf of all others similarly situated, | |
| 10            Plaintiff, | No. 08-205732-0 |
| 11     vs. | |
|   | **SUMMONS – 60-day** |
| 12   UNITED STATES CELLULAR | |
|      CORPORATION, a Delaware corporation; | |
| 13   and THUMBPLAY, INC., a Delaware | JURY TRIAL DEMANDED |
|      corporation, | |
| 14 | |
| 15           Defendants. | |

16     TO THE DEFENDANTS:

17         A lawsuit has been started against you in the above-entitled court by Kathy Hatfield,

18   plaintiff. Plaintiff's claim is stated in the written Complaint (the "Complaint"), a copy of which

19   is served upon you with this Summons.

20         In order to defend against this lawsuit, you must respond to the Complaint by stating your

21   defense in writing, and by serving a copy upon the person signing this summons within 60 days

22   after the service of this summons, excluding the day of service, or a default judgment may be

23   entered against you without notice. A default judgment is one where plaintiff is entitled to what

24

SUMMONS – 60-day               - 1 -

Law Offices of
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

1 | it asks for because you have not responded. If you serve a notice of appearance on the

2 | undersigned person, you are entitled to notice before a default judgment may be entered.

3 | You may demand that the plaintiff file this lawsuit with the court. If you do so, the

4 | demand must be in writing and must be served upon the person signing this summons. Within

5 | 14 days after you serve the demand, the plaintiff must file this lawsuit with the court, or the

6 | service on you of this summons and complaint will be void.

7 | If you wish to seek the advice of an attorney in this matter, you should do so promptly so

8 | that your written response, if any, may be served on time.

9 | This summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State

10 | of Washington.

11 | Dated: July 1, 2008                 Respectfully submitted,

12 | LAW OFFICES OF CLIFFORD A. CANTOR, P.C.

13 | By: _____
Clifford A. Cantor, WSBA # 17893

14 | 627 208th Ave. SE
Sammamish, WA 98074-7033

15 | Tel: (425) 868-7813
Fax: (425) 868-7870

16 |

17 | Jay Edelson
Myles McGuire
KAMBEREDELSON, LLC

18 | 53 West Jackson Blvd., Suite 1530
Chicago, Illinois 60604

19 | Tel: (312) 589-6370
Fax: (312) 589-6378

20 | *Attorneys for Plaintiff*

21 |

22 |

23 |

24 |

SUMMONS – 60-day                 - 2 -

SUPERIOR COURT OF WASHINGTON
SNOHOMISH COUNTY

| KATHY HATFIELD, individually and on behalf of all others similarly situated, | CLASS ACTION |
|---|---|
| Plaintiff, | No. 08-205732-0 |
| vs. | **COMPLAINT** |
| UNITED STATES CELLULAR CORPORATION, a Delaware corporation; UNITED STATES CELLULAR OPERATING COMPANY OF YAKIMA, a Washington corporation; and THUMBPLAY, INC., a Delaware corporation, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff, by her attorneys, alleges upon personal knowledge as to herself and her own acts, and as to all other matters upon information and belief including investigation conducted by her attorneys, as follows:

## NATURE OF THE ACTION

1.      Plaintiff Kathy Hatfield brings this class action complaint against defendants United States Cellular Corporation (US Cellular), United States Cellular Operating Company of Yakima (US Cellular-Yakima), and Thumbplay, Inc. ("Thumbplay") for their wrongful practice

COMPLAINT

- 1 -

LAW OFFICES OF
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

1   of charging and directing and/or facilitating the charging of cellular telephone customers for

2   products and services the customers have not authorized, a practice which has resulted in

3   defendants' unlawfully collection of significant sums of money from consumers, and to obtain

4   redress for all persons adversely affected by their conduct.

5                                    **JURISDICTION AND VENUE**

6       2.       This Court has jurisdiction over the subject matter of this action pursuant to RCW

7   § 2.08.010.

8       3.       Venue is proper pursuant to RCW 4.12.025(1) because, inter alia, US Cellular and

9   US Cellular-Yakima each maintain a registered agent in Snohomish County upon whom process

10  may be served on the respective corporations.

11                                              **PARTIES**

12      4.       Plaintiff Kathy Hatfield is a resident of Washington.

13      5.       Defendant US Cellular is a provider of cellular telephone service in the United

14  States. US Cellular is a Delaware corporation headquartered in the State of Illinois. US Cellular

15  does business throughout the State of Washington and this County.

16      6.       Defendant US Cellular-Yakima is an operating company of US Cellular that

17  provides cellular telephone service. US Cellular-Yakima is a Washington corporation.

18      7.       At all relevant times, defendants US Cellular and US Cellular-Yakima (the "US

19  Cellular Defendants") pursued a common course of conduct, acted in concert with one another,

20  conspired with one another, and/or directed one another to accomplish the wrongdoing

21  complained of, and performed acts and concealed material information in furtherance thereof. In

22  addition to the wrongful conduct alleged, which gives rise to the US Cellular Defendants'

23  primary liability, the US Cellular Defendants aided and abetted, and knowingly assisted one

24  another, in perpetrating the wrongful conduct complained of.

COMPLAINT                                    - 2 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ◆ Fax: (425) 868-7870

8. Whenever this complaint alleges an act, deed, or transaction by one of the US Cellular Defendants, the allegation means that that defendant engaged in the act, deed or transaction by or through the other and/or both of the US Cellular Defendants and/or its or their representatives while acting within the course and scope of their employment or agency; were actively engaged in the management, direction, and/or control of the entity; and/or were transacting the entity's ordinary business or its affairs.

9. Defendant Thumbplay is an aggregator, provider, and deliverer of mobile content services in the United States. Thumbplay is a Delaware corporation headquartered in the State of New York. Thumbplay does business with customers in the State of Washington and elsewhere.

## FACTUAL BACKGROUND

10. This case arises from two closely related phenomena. The first is the capability of most cellular telephones not only to make and receive telephone calls but also to send and receive text messages, including – most significantly for present purposes – "premium" text message services. These services, also known as "mobile content," include products that range from the basic (customized ringtones for use with cell phones, sports score reports, weather alerts, stock tips, horoscope services, and the like) to those requiring more advanced capabilities (such as direct payment services, interactive radio, and participatory television).

11. The second underlying phenomenon is this: Just as providers of premium mobile content deliver their products by means of cell phone technology, they likewise charge and collect from their customers by "piggybacking" on the cell phone bills sent out by wireless carriers, including the US Cellular Defendants. Further, because the mobile content providers by themselves most often lack the wherewithal to negotiate the necessary relationships with the much larger wireless carriers, they do so with the help of third-party companies known as aggregators. These aggregators act as middle-men, representing numerous mobile content

COMPLAINT — 3 —

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

1  providers in arriving at the agreements that allow them to use the billing and collection
2  mechanisms of the wireless carriers. In turn, both the aggregators and the wireless carriers are
3  compensated for their services to the mobile content providers by retaining a substantial
4  percentage of the amount for mobile content transactions.

5        12.    The rapid and largely unplanned growth of the premium mobile content industry
6  has led both to the above-described structure and a disastrous flaw within it. That flaw –
7  understood, perpetuated, and even encouraged by carriers, aggregators, and mobile content
8  providers such as the US Cellular Defendants and Thumbplay – is an open secret within the
9  industry, but little understood outside of it. The billing and collection systems established by
10  companies including defendants in aid of the mobile content industry that enriches them are
11  conspicuously free of any checks or safeguards to prevent erroneous and unauthorized charges
12  from being added to customers' bills.

13        13.    As defendants know, thousands of dollars have been collected on account of such
14  unauthorized charges for mobile content in the industry over the last few years. And while it has
15  always been within the power of companies such as defendants to institute simple and effective
16  measures that would prevent this, they have instead knowingly maintained the very system that
17  has allowed these erroneous charges. Defendants have reaped and retained their respective share
18  of the improper collections.

19        14.    While the total sales in the nation of mobile content since its inception amount to
20  a significant sum, the business is still in its infancy. The burgeoning industry has already
21  expanded from ordinary ringtones into mass media-related products such as interactive radio and
22  participatory voting at television and concert events and, most recently, into services that enable
23  cell phones to function as credit cards. Unchecked, defendants' practices will injure an ever-
24  increasing number of unwitting consumers, inflicting damages of an untold magnitude.

COMPLAINT          - 4 -

## THUMBPLAY'S ROLE IN THE WRONGFUL CONDUCT

15.     Unlike transactions made using checks and credit cards, which require a signature or a highly private sixteen-digit credit card number, the only information a mobile content provider needs to charge a consumer for its products is the consumer's cellular telephone number. Once a mobile content provider has a consumer's cell phone number, it can cause that consumer to be billed for services and products irrespective of whether the consumer actually agreed to purchase them.

16.     Armed with only a cell phone number, the mobile content provider can simply provide that number, along with an amount to be charged, to a billing aggregator. The aggregator, in turn, instructs the relevant cellular carrier to add the charge to the bill associated with that cell phone number. The charge will then appear on the consumer's cell phone bill, often with only minimal, cryptic identifying information.

17.     Because the protections normally present in consumer transactions – such as signatures and private credit card numbers – are absent from this process, the likelihood of false charges increases enormously. And because a substantial part of mobile content "sales" are effected through web sites using misleading, oblique, or inadequately explained "consent" procedures, that likelihood increases by another order of magnitude. Mobile content providers have powerful financial incentives to collect as many cell phone numbers as possible but little incentive to ensure that the owners of those numbers have truly agreed to purchase their goods and services.

18.     In order to tap into the emerging mobile content marketplace and make content services available to wireless consumers, content providers must first obtain access to wireless carriers' mobile communications networks and frequently do so by "partnering" with aggregators – intermediary companies that offer content providers direct access to the carriers

COMPLAINT                                    - 5 -

1 through existing relationships. This allows content providers to focus on developing and
2 marketing branded content, applications, and programs while aggregators manage the complex
3 carrier relationships, distribution, billing, and customer service.

4     19.    While aggregators charge their content provider customers some upfront fees,
5 their revenue is primarily generated through a "revenue share" on transactions for which they bill
6 cell phone subscribers: each time a charge is incurred in connection with the purchase of mobile
7 content services offered by a content provider, the aggregator and/or the content provider causes
8 said charge to be billed directly on the cellular telephone bill of the carrier's customer who
9 currently owns and/or uses the telephone number (claimed to be) associated with said purchase.

10     20.    The carrier then bills and collects the charge from its current subscriber, retains
11 about a portion of the proceeds as its "revenue share," and then remits the balance to the
12 aggregator that has direct access to its network, while the aggregator retains a percentage of the
13 balance in the form of its own "revenue share" and then remits the remainder directly to the
14 mobile content provider (or, in some instances, to another aggregator who then retains a
15 percentage of the balance in the form of its own "revenue share" and then remits the balance to
16 its mobile content provider client).

17     21.    In this web of businesses, Thumbplay aggregates, promotes, and delivers mobile
18 content and facilitates and/or participates in collecting charges from cell phone users, often
19 without consent.

20 **THE US CELLULAR DEFENDANTS' ROLE IN THE WRONGFUL CONDUCT**

21     22.    The US Cellular Defendants use form contracts ("Service Agreements") under
22 which customers purchase cell phone services.

23     23.    As described above, the US Cellular Defendants' services include providing
24 access to and billing for various third-party mobile content services such as ring tones, chat

COMPLAINT     - 6 -

1   services, horoscopes, stock tips, weather alerts, participatory television, mobile payment

2   services, and other forms of software provided by hundreds of third-party vendors.

3       24.    The duty of good faith and fair dealing, a part of every contract, requires that the

4   US Cellular Defendants not bill any customer for any good or service not authorized by the

5   customer.

6       25.    Upon execution of said Service Agreements and activation of cellular telephone

7   accounts, the US Cellular Defendants provide customers with a ten-digit cellular telephone

8   number.

9       26.    As explained above, unbeknownst to its customers, the US Cellular Defendants

10   frequently charge consumers for services that were never authorized.

11      27.    *As a result, the US Cellular Defendants have been for years systematically,*

12   repeatedly and without authorization, billing and collected from their customers – including

13   plaintiff – for purchase of products and services not agreed to by those customers. The US

14   Cellular Defendants and third-party service providers have, on information and belief, profited

15   significantly through this practice.

16      28.    The US Cellular Defendants' conduct is by no means accidental. As previously

17   alleged, the US Cellular Defendants know that many of their cellular telephone customers

18   dispute the mobile content provider's and/or aggregators' claim that such customer consented to

19   be charged for mobile content services. The US Cellular Defendants further know that they

20   cannot authenticate such customer's authority to be billed for such mobile content charges. In

21   light of its knowledge of these facts, the US Cellular Defendants' decision to continue to charge

22   their customers for mobile content without taking steps to authenticate the representations of the

23   mobile content providers and/or aggregators that the customer's authority to be charged was

24   obtained constitutes a wrongful practice to overcharge large numbers of people.

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

1    29.    Because the amount that the US Cellular Defendants are taking is small on an

2    individual basis – as little as a few dollars to perhaps several hundred dollars per person – and

3    because of the US Cellular Defendants' vast resources and superior bargaining power, the US

4    Cellular Defendants employ this practice with the hope and expectation that their wrongful

5    conduct will go unpunished.

6    **ALL DEFENDANTS AVOID AN EASY SAFEGUARD**

7    30.    If any defendant wanted to end this wrongful billing, it could do so in short order.

8    All it would have to do to ensure that it was obtaining the consent of the charged party is agree to

9    process a unique "access code" for each customer, provided by the US Cellular Defendants to the

10    account holder and his/his authorized representatives at the time the account is opened, and

11    require that the access code be produced anytime a third party attempts to charge the account. If

12    a matching access code is not provided, no charges would be included on the customer's cell-

13    phone billing statement.

14    31.    Instead of implementing such a simple safeguard, defendants have intentionally

15    created and maintained a system that encourages wrongdoing at every step. Such a system

16    results in the wrongful charging of relatively small amounts of money to large numbers of

17    people.

18    **FACTS RELATING TO THE PLAINTIFF**

19    32.    In or before 2008, plaintiff purchased new cell phone service for her personal use

20    from an authorized sales representative of the US Cellular Defendants.

21    33.    On that same day, in exchange for a cellular telephone service plan from the US

22    Cellular Defendants, Hatfield agreed to pay the US Cellular Defendants a set monthly fee for a

23    period of approximately 12 months.

24

COMPLAINT    - 8 -

1    34.    In or about 2008, Hatfield's cell phone account was charged by the US Cellular

2  Defendants for unwanted mobile content services on behalf of third-parties, including

3  Thumbplay.

4    35.    At no time did Hatfield authorize the purchase of or billing for these products and

5  services by the US Cellular Defendants or anyone else and at no time did Hatfield consent to

6  sending of so-called premium text messages to her cellular telephone.

7    36.    During the relevant time period, defendants caused Hatfield to be charged and pay

8  service fees for so-called premium text messages.

9    37.    At no time did Hatfield authorize defendants or anyone else to bill her for these

10  charges and at no time did defendants verify Hatfield's purported authorization of these charges.

11    38.    Defendants have yet to provide a full refund of the unauthorized charges

12  consisting of the premium text message charges, ordinary text messages, data charges, and back

13  interest, or implement adequate procedures to ensure that such unauthorized charges will not

14  appear in future billing periods.

15                                    **CLASS ALLEGATIONS**

16    39.    Hatfield brings this action pursuant to CR 23 on behalf of herself and two classes:

17  The Carrier Class, consisting of

18      All wireless telephone subscribers of the US Cellular Defendants in the State of
        Washington who suffered losses or damages as a result of the US Cellular
19      Defendants' billing and collecting for mobile content products and services not
        authorized by the subscriber.
20

21  The Thumbplay Class, consisting of

22      All wireless telephone subscribers in the nation who suffered losses or damages as a
        result of Thumbplay billing for mobile content products and services not authorized by
23      the subscriber.

24

COMPLAINT                                - 9 -

1  Excluded from both proposed Classes are (i) the defendants, and (ii) any employee of a
2  defendant.

3      40.     Each Class consists of hundreds if not thousands of individuals and other entities,
4  making joinder impractical.

5      41.     With respect to each Class, the claims of plaintiff Hatfield are typical of the
6  claims of the other members of the Class.

7      42.     With respect to each Class, plaintiff will fairly and adequately represent and
8  protect the interests of the other members.  Plaintiff has retained counsel with substantial
9  experience in prosecuting complex litigation and class actions.  Plaintiff and her counsel are
10  committed to vigorously prosecuting this action on behalf of the members of the Classes, and
11  have the financial resources to do so.  Neither plaintiff nor her counsel has any interest adverse to
12  those of the other members of the Classes.

13      43.     With respect to each Class, absent a class action, most members of the Class
14  would find the cost of litigating their claims to be prohibitive, and will have no effective remedy.
15  The class treatment of common questions of law and fact is also superior to multiple individual
16  actions or piecemeal litigation in that it conserves the resources of the courts and the litigants,
17  and promotes consistency and efficiency of adjudication.

18      44.     With respect to each Class, defendants have acted and failed to act on grounds
19  generally applicable to plaintiff and the other members of the Class, requiring the Court's
20  imposition of uniform relief to ensure compatible standards of conduct toward the members of
21  the Class.

22      45.     With respect to each Class, the factual and legal bases of defendants' liability to
23  plaintiff and to the other members of the Class are the same, resulting in injury to the plaintiff

24

COMPLAINT                                    - 10 -

1  and all of the other members of the Class. Plaintiff and the other members of the Classes have

2  all suffered harm and damages as a result of defendants' wrongful conduct.

3      46.      There are many questions of law and fact common to the claims of plaintiff and

4  the other members of the Classes, and those questions predominate over any questions that may

5  affect individual members of the Classes. Common questions for the Carrier Class include but

6  are not limited to the following:

7              (a)    whether the US Cellular Defendants' conduct is in breach of contract; and

8              (b)    whether the US Cellular Defendants' practices constitute unfair and

9                     deceptive acts or practices.

10     47.      Common questions for the Thumbplay Class include but are not limited to the

11  following:

12             (a)    whether Thumbplay's conduct amounts to unjust enrichment; and

13             (b)    whether Thumbplay's conduct amounts to tortious interference with a

14                    contract.

15     48.      With respect to each Class, the questions of law and fact common to the members

16  of the Class predominate over any questions affecting only individual members and a class

17  action is superior to all other available methods for the fair and efficient adjudication of the

18  controversy.

19                          **FIRST CAUSE OF ACTION**

20          **Breach of Contract on Behalf of Plaintiff and the Carrier Class**

21     49.      Plaintiff incorporates by reference the foregoing allegations.

22     50.      Plaintiff and the Carrier Class entered into substantially identical agreements with

23  the US Cellular Defendants whereby plaintiff and the US Cellular Defendants agreed that

24  plaintiff would pay a certain sum of money in exchange for the US Cellular Defendants'

COMPLAINT                          - 11 -

1 | activation of plaintiff's cellular telephone service and the US Cellular Defendants' promise to

2 | provide various communication and related services to plaintiff.

3 | 51. The US Cellular Defendants expressly and/or impliedly agreed to provide plaintiff

4 | and the Carrier Class with a cellular telephone number free of unauthorized charges for third-

5 | party products and services.

6 | 52. The US Cellular Defendants expressly and/or impliedly agreed to bill plaintiff and

7 | the Carrier Class only for products or services the purchase of which they had authorized.

8 | 53. The US Cellular Defendants expressly and/or impliedly agreed to carry out its

9 | obligations using good faith and fair dealing.

10 | 54. The US Cellular Defendants breached their contractual obligations by providing

11 | plaintiff and the Carrier Class with cellular telephone accounts that included unauthorized

12 | charges for mobile content.

13 | 55. The US Cellular Defendants further breached their contractual obligations,

14 | including its contractual obligation of good faith and fair dealing, by billing plaintiff and the

15 | Carrier Class for products or services the purchase of which they never authorized.

16 | 56. Plaintiff and the Carrier Class have performed their obligations under the

17 | contracts.

18 | 57. The aforementioned breaches of contract have proximately caused plaintiff and

19 | the Carrier Class economic injury and other damages.

20 | **SECOND CAUSE OF ACTION**

21 | **Violation of the Washington Consumer Protection Act, RCW § 19.86.010 *et seq.***

22 | **on Behalf of Plaintiff and the Carrier Class**

23 | 58. Plaintiff incorporates by reference the foregoing allegations.

24 |

COMPLAINT      - 12 -

1     59.    The Washington Consumer Protection Act ("CPA") declares unlawful (a) an

2 unfair or deceptive act or practice, (b) occurring in trade or commerce, (c) with a public interest

3 impact, (d) that causes injury to the plaintiff.

4     60.     At all relevant times, The US Cellular Defendants have engaged in unfair and

5 deceptive acts and practices in the conduct of their business by misleadingly and deceptively

6 charging their customers and collecting for unauthorized mobile content charges.

7     61.    The US Cellular Defendants' unfair and deceptive business acts and practices

8 impact the public interest. The US Cellular Defendants committed the unfair and deceptive acts

9 in the course of their business as part of a pattern and generalized course of conduct. The US

10 Cellular Defendants' unfair and deceptive business acts and practices have affected, and continue

11 to affect, a great many consumers.

12     62.    As a result of the US Cellular Defendants' unfair and deceptive acts and practices

13 in the conduct of their business, plaintiff and the other members of the Carrier Class have

14 suffered actual financial damages to their business and/or property.

15     63.    Unless the US Cellular Defendants are enjoined from their unfair and deceptive

16 acts and practices, the US Cellular Defendants will continue to harm consumers who may not

17 even know that they are incurring such harm.

18                       **THIRD CAUSE OF ACTION**

19     **Restitution / Unjust Enrichment on Behalf of Plaintiff and the Thumbplay Class**

20     64.    Plaintiff incorporates by reference the foregoing allegations.

21     65.    A benefit has been conferred on Thumbplay by plaintiff and the Class.

22 Thumbplay has received and retains money belonging to plaintiff and the Class resulting from its

23 facilitation of billing and collecting significant amounts of money in unauthorized mobile

24 content charges.

COMPLAINT               - 13 -

1    66.    Thumbplay appreciates or has knowledge of said benefit.

2    67.    Thumbplay gained money from plaintiff and the Class as a direct result of

3 Thumbplay's conduct.

4    68.    Under principles of equity and good conscience, Thumbplay should not be

5 permitted to retain the money belonging to plaintiff and the Class which Thumbplay has unjustly

6 received as a result of its actions.

7               **FOURTH CAUSE OF ACTION**

8    **Tortious Interference with a Contract on Behalf of Plaintiff and the Thumbplay Class**

9    69.    Plaintiff incorporates by reference the foregoing allegations.

10    70.    Plaintiff and the Class had contractual relationships with their wireless carriers

11 whereby they agreed to pay a certain sum of money in exchange for activation of their cellular

12 telephone accounts and their carriers' promise to provide various communication and related

13 services to plaintiff and the Class and to bill plaintiff and the Class only for products or services

14 the purchase of which they had authorized.

15    71.    Thumbplay knew of said contractual relationships and intended to and did induce

16 a breach or disruption of the contractual relationships.

17    72.    Thumbplay intentionally interfered with said contractual relationship through

18 improper motives and/or means by knowingly and/or recklessly continually causing to be placed

19 on the cellular telephone bills of cellular telephone owners unauthorized charges.

20    73.    Plaintiff and the Class suffered loss as a direct result of the conduct of

21 Thumbplay.

22               **PRAYER FOR RELIEF**

23    WHEREFORE, plaintiff Kathy Hatfield, on behalf of herself and the Classes, prays for

24 the court to provide the following relief:

COMPLAINT           - 14 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

1    A.   Certify this case as a class action on behalf of the Classes defined above and, with

2  respect to both classes, appoint Kathy Hatfield as class representative and appoint her counsel as

3  class counsel;

4    B.   Declare that the actions of the US Cellular Defendants constitute a breach of

5  contract and violate the CPA;

6    C.   Enter judgment against the US Cellular Defendants for all damages caused by

7  their conduct and, to the extent authorized under the CPA, treble damages;

8    D.   Declare that the actions of Thumbplay, as set out above, constitute unjust

9  enrichment and tortuous interference with a contract;

10    E.   Enter judgment against Thumbplay for restitution and/or damages to the full

11  extent appropriate;

12    F.   Award plaintiff and the Classes their reasonable litigation expenses and attorneys'

13  fees;

14    G.   Award plaintiff and the Classes pre- and post-judgment interest, to the extent

15  allowable;

16    H.   Enter injunctive and/or declaratory relief as is necessary to protect the interests of

17  plaintiff and the Classes; and

18    I.   Award such other and further relief as equity and justice may require.

19                              **JURY DEMAND**

20    Plaintiff requests a trial by jury of all issues so triable.

21
     Dated: July 1, 2008                    Respectfully submitted,
22
                                            LAW OFFICES OF CLIFFORD A. CANTOR, P.C.
23
                                       By: _____
24

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Clifford Cantor, WSBA # 17893
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813
Fax: (425) 868-7870

Jay Edelson
Myles McGuire
KAMBEREDELSON, LLC
53 West Jackson Blvd., Suite 1530
Chicago, Illinois 60604
Tel: (312) 589-6370
Fax: (312) 589-6378

*Attorneys for Plaintiff*

COMPLAINT

- 16 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
827 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (426) 868-7870